IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
2:15-CV-41-FL

| | |
|---|---|
| YVETTE MICHELE ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Yvette Michele Allen ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for Supplemental Security Income ("SSI") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. D.E. 24, 29. Both filed memoranda in support of their respective motions. D.E. 25, 30. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 22 July 2016 Text Ord. For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded for further proceedings.[1]

## BACKGROUND

### I. CASE HISTORY

Plaintiff filed an application for SSI on 17 September 2007, alleging a disability onset date of 1 January 2007. Transcript of Proceedings ("Tr.") 98 (application summary form stating that "[o]n September 17, 2007, you applied for [SSI]"); 386 (ALJ's specification of 17 Sept.

---

[1] This Memorandum and Recommendation supersedes the Memorandum and Recommendation filed in this case on 11 January 2017 (D.E. 32), which was vacated by order entered today (D.E. 33).

2007 as the application filing date).[2] The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 30; 31; 37-40; 47-50. On 12 July 2011, a hearing ("2011 hearing") was held before an administrative law judge ("ALJ") (Lisa R. Hall), at which plaintiff (appearing with counsel) and a vocational expert testified. Tr. 343-72. The ALJ issued a decision denying plaintiff's claim on 1 September 2011 ("2011 decision"). Tr. 18-26.

Plaintiff requested review by the Appeals Council. *See* Tr. 5. On 15 March 2012, it admitted additional evidence (Tr. 335-42), which included a decision by the North Carolina Department of Health and Human Services, dated 18 October 2011, finding plaintiff entitled to disability-based Medicaid disability benefits ("Medicaid decision") (Tr. 335-38), but denied review. Tr. 5-8. The ALJ's decision thereby became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On 14 May 2012, plaintiff appealed this decision to this court. *See Allen v. Colvin*, 2:12-CV-29-FL (E.D.N.C.). On 1 August 2013, the court entered an order remanding the case for proper consideration of the Medicaid decision. Tr. 441-44. In response to the court's order, on 22 November 2013, the Appeals Council vacated the 2011 decision and remanded the case to an ALJ for the conduct of another hearing and issuance of a new decision. Tr. 447.

Pursuant to the remand, a video hearing was held on 4 November 2014 before a different ALJ (Catherine Harper) than the one who presided at the 2011 hearing. Tr. 740-59. Plaintiff, again represented by counsel, and a vocational expert different from the one appearing at the 2011 hearing testified. The ALJ issued a decision denying plaintiff's claim on 20 February

---

[2] Both plaintiff (Pl.'s Mem. 1) and the Commissioner (Comm'r's Mem. 1) state 29 October 2009 as the application date, although they cite to the application summary referenced above that states the application filing date as 17 September 2007 (Tr. 98-104).

2015. Tr. 385-96. Plaintiff timely requested review by the Appeals Council. Tr. 378-79. On 2 September 2015, the Appeals Council denied review, providing a detailed explanation of the denial. Tr. 373-77. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 6 November 2015, pursuant to 42 U.S.C. § 1383(c)(3). *See* Mot. to Proceed *In Forma Pauperis* (D.E. 1); Ord. Allowing Mot. (D.E. 5); Compl. (D.E. 7).

## II.  STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* (a)(3)(B).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four,

whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1). To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because she is able to perform her past work. Or, if the exertion required for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429. The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### III. ALJ'S FINDINGS

Plaintiff was 43 years old on the date she filed her application for SSI, 17 September 2007, and 50 years old on the date of the hearing on 4 November 2014. *See* Tr. 395 ¶ 6. The ALJ found that plaintiff has at least a high school education (Tr. 395 ¶ 7) and no past relevant work (Tr. 395 ¶ 5).

4

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the application date. Tr. 387 ¶ 1. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: "'mild' disc protrusion at LS-Sl[;] 'mild' disc protrusion at the C4-5 and C6-7; and cervical spondylosis." Tr. 388 ¶ 2. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings, including specifically Listing 1.04 for spinal disorders. Tr. 389 ¶ 3.

The ALJ next determined that plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b),[3] subject to the following exceptions:

> The claimant should never climb ladders, ropes and scaffolds. She can occasionally climb ramps or stair, stoop and crouch. She can frequently balance, kneel and crawl. The claimant can occasionally reach overhead with both arms. She should avoid concentrated exposure to unprotected heights.

Tr. 389 ¶ 4.

The ALJ found at step four that plaintiff has no past relevant work. Tr. 395 ¶ 5. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of cashier, storage facility rental clerk, and merchandise marker. Tr. 395-96 ¶ 9. The ALJ accordingly concluded that plaintiff was not disabled since the date she filed her application for SSI, 17 September 2007. Tr. 396 ¶ 10.

---

[3] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 416.967.

## STANDARD OF REVIEW

Under 42 U.S.C. § 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.* at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible

without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and that the court find her disabled as a matter of law on the grounds that the ALJ erred in her (1) severity determination at step two, (2) listing determination at step three, (3) evaluation of the Medicaid decision, (4) assessment of medical opinion evidence, (5) assessment of plaintiff's credibility, (6) RFC determination, and (7) hypothetical to the vocational expert. Because the court finds that the ALJ's assessment of medical opinion evidence and plaintiff's credibility are dispositive of this appeal, it reaches only those contentions on the merits.

## DISCUSSION

### I. APPLICABLE LEGAL PRINCIPLES

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* § 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well

7

Case 2:15-cv-00041-FL Document 34 Filed 01/12/17 Page 7 of 16

supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, and any specialization of the opining source. 20 C.F.R. § 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. § 416.927(c), (e); *Casey v. Colvin*, No. 4:14-cv-00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted*, 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating

examining source and to the opinions of an examining source than the opinions of a nonexamining source. *See* 20 C.F.R. § 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See, e.g.*, Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *3 (2 July 1996).

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. § 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

The ALJ's assessment of a claimant's credibility involves a two-step process. First, the ALJ must determine whether the claimant's medically documented impairments could cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594-95. Next, the ALJ must evaluate the claimant's statements concerning those symptoms. *Id.* at 595. The ALJ's "'decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)).[4] The factors that the ALJ must consider in evaluating a claimant's credibility include the medical opinions of record. *See* 20 C.F.R. § 416.929(c)(1).

---

[4] Although Soc. Sec. Ruling 96-7p was rescinded by Soc. Sec. Ruling 16-3p, 2016 WL 1119029 (issued 16 Mar. 2016; effective 28 Mar. 2016 pursuant to 81 Fed. Reg. 15776 (24 Mar. 2016)), it postdates the ALJ's decision in this case.

## II. ANALYSIS

Plaintiff challenges the ALJ's assessment of the opinions of one of her treating physicians, Theodore W. Nicholas, M.D. As described by the ALJ, Dr. Nicholas treated plaintiff between May 2008 and March 2009:

> The claimant was referred by the emergency room to Atlantic Pain Management and Rehabilitation for evaluation and treatment. On May 23, 2008, Dr. Nicholas examined the claimant and observed good alignment of the cervical spine, good range of motion (ROM), a negative Spurling's maneuver, good ROM of the shoulders, good lumbar flexion, and intact deep tendons and sensation. The claimant had antalgic gait, but good ROM of the hips. She had tenderness in the back and pain at 45 degrees with straight leg raising test on the right. The claimant had treatment at the clinic in July 2008, September 2008 and March 2009 and notes from these visits indicated that she benefitted from medications without side-effects/intolerance and the medication was providing improved function (Exhibit B14F [Tr. 177-84]).

Tr. 390 ¶ 4. In addition to these four visits, Dr. Nicholas saw plaintiff on 15 December 2008. Tr. 178.

Dr. Nicholas completed a medical source statement, comprising one page of what appeared to be a multi-page form, dated 18 July 2008, setting out opinions regarding plaintiff. Tr. 339. The ALJ largely discounted Dr. Nicholas's opinions:

> I give little to no weight to Dr. Nicholas' opinion that the claimant is "totally, permanently disabled," has no work capacity, and is not able to do any sitting, standing, walking, bending, lifting and carrying (Exh. B19F). The first opinion is on [a] matter reserved to the Commissioner of Social Security, and the severity of the remaining limitations are out of proportion to the diagnostic imaging of the cervical and lumbar spine from January 2012 [Tr. 340-42] as well as the objective findings from the May 2014 consultative orthopedic examination [by Gwendolyn Riddick, D.O. (Tr. 504-17)].

Tr. 394 ¶ 4.

The ALJ is correct that Dr. Nicholas's opinion that plaintiff is "totally, permanently disabled" is a matter reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d). It is therefore

not entitled to any special weight because of its source, but was still, of course, required to be accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3.

In contrast, the court cannot say that the ALJ's reliance on the evidence she cites was proper. An obvious problem is that the imaging and consultative examination by Dr. Riddick she found discredited Dr. Nicholas's opinions came years after Dr. Nicholas's evaluation. Specifically, the imaging came about three and a half years later and the consultative examination about six years later. While this delay is arguably immaterial to whether plaintiff was permanently disabled, as Dr. Nicholas opined, it clearly is relevant to whether plaintiff was disabled at the time of Dr. Nicholas's evaluation. The ALJ does not offer any explanation why the findings from the imaging and consultative examination can be deemed to accurately reflect plaintiff's condition years earlier. The court declines to indulge in an assumption that plaintiff's spinal impairments would ineluctably deteriorate over time such that if they were not disabling in 2012 and 2014, they were necessarily not disabling in 2008. Any such assumption is undermined by the ALJ's determination not to include degenerative disc disease, which generally entails deterioration over time,[5] as a severe impairment of plaintiff, notwithstanding her having been diagnosed with it. *See* Tr. 390 ¶ 4; 391 ¶ 4.

Moreover, the duration requirement for an impairment to qualify as disabling is 12 months or more. *See* 20 C.F.R. § 416.905(a). The alleged period of disability here runs from 17 September 2007, the alleged date of onset, to 20 February 2015, the date of the ALJ's decision, a span of almost seven and a half years. It is therefore theoretically possible for plaintiff to have been disabled for a portion of this period prior to the 2012 imaging and 2014 findings by Dr. Riddick.

---

[5] *See generally* Degenerative Disc Disease, University of Maryland Medical Center Spine Center, http://umm.edu/programs/spine/health/guides/degenerative-disc-disease (last visited 12 Jan. 2017).

The ALJ's reliance on Dr. Riddick's evaluation is questionable for another reason. As noted, the ALJ states that she relies on Dr. Riddick's objective findings. The ALJ summarized these findings as follows:

> The claimant had a consultative orthopedic examination with Dr. Riddick on May 31, 2014 (Exh. B21F). The claimant had diminished range of motion of the cervical spine, left shoulder and back flexion, but otherwise demonstrated full range of motion throughout her body. Her mood was observed to be appropriate, with normal memory and good concentration. The claimant exhibited a steady gait and did not use an assistive device. She had normal 5/5 motor strength and no palpable muscle spasms. She had a normal sensory exam and negative straight leg raise test. The claimant complained of pain in her back and left shoulder, but was able to lift and carry light objects at the exam. She could squat and rise with moderate difficulty, but had no difficulty in getting on and off the exam table. Dr. Riddick noted that the claimant could walk on her heels and toes with ease, and she had normal tandem walking (Exh. B21F).

Tr. 391 ¶ 4.

The ALJ evidently deemed these findings to be benign. But Dr. Riddick did not unambiguously deem them so. As the ALJ indicates in her assessment of Dr. Riddick's opinions, Dr. Riddick offered opinions that plaintiff had significant limitations, but the ALJ rejected these in favor of more benign opinions by Dr. Riddick:

> I give great weight to Dr. Riddick's opinion in Exhibit B21F that the claimant can sit and stand normally in an eight-hour day; has mild limitations with walking; and does not need an assistive device. I give great weight to Dr. Riddick's opinion that the claimant has moderate limitations with lifting and carrying weight, though she can occasionally bend, stoop, crouch and squat.
> . . . .
> I assign no weight to Dr. Riddick's opinion on p. 8 of her report that the claimant is limited to sitting one hour at a time, standing 20 minutes at a time, or walking 30 minutes at a time. This is internally inconsistent with noting on p. 6 of the same report that the claimant can sit and stand normally in an 8 hour day, and has only "mild" limitations with walking.
> . . . .
> I give no weight to her opinion on p. 10 of the report that the claimant was limited to never crouching and only occasionally balancing, with frequent stooping. This is internally inconsistent with noting on p. 6 of the same report that the claimant can occasionally bend, stoop, crouch and squat; that the claimant had no limits on balancing; that the claimant could occasionally stoop; and occasionally crouch.

12
Case 2:15-cv-00041-FL   Document 34   Filed 01/12/17   Page 12 of 16

Tr. 394 ¶ 4.

The problem is that the ALJ did not meaningfully explain why she adopted the benign opinions by Dr. Riddick. Merely acknowledging that the limiting opinions conflicted with the benign opinions does not constitute an explanation. Left unresolved by the ALJ is therefore why she deems Dr. Riddick's objective findings to be as benign as she seemingly does, notwithstanding the contrary view expressed, in part, by Dr. Riddick herself.

In addition, the ALJ refers to Dr. Riddick as an "orthopedic expert," suggesting that she gave weight to Dr. Riddick's opinions on the grounds that she is specialized as an orthopedist. Tr. 388 ¶ 2; *see* 20 C.F.R. § 416.927(c)(5). In her report, Dr. Riddick lists her specialty as "Obstetrician/Gynecologist." Tr. 515. The ALJ thereby injects further ambiguity into her assessment of Dr. Riddick's opinions.

The ALJ's assessment of the opinions of consulting examining physician Maqsood Ahmed, M.D. parallels her assessment of Dr. Nicholas's opinions. The ALJ described Dr. Ahmed's evaluation as follows:

> On May 16, 2009, Maqsood Ahmed, M.D., performed a consultative internal medicine examination. The claimant reported a two-year history of neck pain that radiated down her right arm into the right thumb and middle finger. The claimant also complained of constant low back pain that radiated into the right leg. Her shoulder examination was unremarkable. The claimant was able to heel and toe-walk and raise her arms above her head though complained of pain. Her motor strength was normal at 5/5 with her handgrip strength nearly normal at 4/5. The claimant had subjective tenderness along the spine with restricted range of motion and neck tightness. She had positive right-sided straight leg raising test and Spurling's sign. Dr. Ahmed advised the claimant to continue pain management and take medications as prescribed (Exhibit B15F [Tr. 172-76]).

Tr. 391 ¶ 4.

The ALJ stated that she gave "little weight" to Dr. Ahmed's opinion "that the claimant's 'prognosis for gainful employment is poor.'" Tr. 394 ¶ 4. She cited as reasons the same January

2012 imaging and May 2014 consultative examination by Dr. Riddick. As with Dr. Nicholas's opinions, she offers no explanation why the findings in 2012 and 2014 can properly be deemed to reflect plaintiff's condition years earlier. And, of course, she left unresolved the ambiguity regarding Dr. Riddick's opinions.

The ALJ further relies on the January 2012 imaging and 2014 findings by Dr. Riddick—along with "the totality of the treatment records"[6]—as bases for giving "little to no weight" to the determination in the Medicaid decision that plaintiff met Listing 1.04. Tr. 395 ¶ 4. The imaging was less than a year after the effective date of the Medicaid decision—March 2011 (*see* Tr. 335 ¶ 5)—but Dr. Riddick's examination was more than three years later. As before, the ALJ does not explain the temporal relevance of either the imaging, or more significantly given the amount of time involved, Dr. Riddick's findings to the Medicaid decision. The ambiguity of Dr. Riddick's opinions is also unresolved.

The ALJ additionally relied on Dr. Riddick's objective findings in determining that plaintiff's allegations were "only partially credible." Tr. 392 ¶ 4. Again, ALJ did not resolve the ambiguity in Dr. Riddick's opinions.

There may well have been evidence of record the ALJ could have relied upon in assessing the foregoing opinion evidence and plaintiff's credibility that would not have presented the concerns discussed. But it is not the court's role to speculate as to what the ALJ might have done, but to evaluate what the ALJ did do.

Given the deficiencies in the ALJ's evaluation of foregoing opinion evidence and plaintiff's credibility, the court cannot say that the ALJ's decision is supported by substantial

---

[6] Although the term "treatment records" connotes the records of treating sources, the ALJ's decision indicates that at least in one instance it includes reports on consultative evaluations. *See* Tr. 393 ¶ 4 (ALJ's finding that one part of an opinion was "not consistent with subsequent treatment records (i.e., see consultative orthopedic exam dated May 2014 . . .")). In any decision on remand, the Commissioner should state clearly what records are included in "treatment records" or like terms.

14

Case 2:15-cv-00041-FL   Document 34   Filed 01/12/17   Page 14 of 16

evidence. The ALJ has failed to build "'an accurate and logical bridge from the evidence to [the] conclusion[s]'" she reached, as required. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). This case should accordingly be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[7] Given the dispositive nature of the foregoing issues, the court does not reach the merits of the remaining contentions asserted by plaintiff.[8]

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 24) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 29) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence or the outcome of this case. These are matters that are for the Commissioner to resolve.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 26 January 2017 to file written objections to the Memorandum and Recommendation. Note that any objections

---

[7] The court is aware that the recommended remand would be the second in this case. Particularly in light of this fact, the court has considered whether it should remand for the award of benefits. *See, e.g., Waddell v. Colvin*, 111 F. Supp. 3d 684, 688 (E.D.N.C. 2015) ("The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one that lies within the sound discretion of the district court." (internal quotation marks omitted)). The court does not believe such an award is appropriate because of, among other reasons, the circumstances giving rise to the initial remand.

[8] The ALJ cites plaintiff's criminal history in support of her determination on plaintiff's credibility. Tr. 392 ¶ 4. Plaintiff argues that her criminal history is not in the record (Pl.'s Mem. 34) and the Commissioner cites to only a statement in plaintiff's SSI application that she had been accused or convicted of a felony or an attempt to commit a felony (Comm'r's Mem. 30 (referencing Tr. 99)). In its 2 September 2015 decision, the Appeals Council noted that plaintiff's criminal history "is a matter of public record." Tr. 374. In fact, a copy of her criminal record, which includes the offenses cited by the ALJ, appears in the record at Tr. 483-85.

must be addressed to this Memorandum and Recommendation, not the Memorandum and Recommendation filed on 11 January 2017 and docketed at D.E. 32, and that the foregoing 26 January 2017 deadline, not the deadline in the Memorandum and Recommendation at D.E. 32, applies. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 12th day of January 2017.

James E. Gates
United States Magistrate Judge